UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH K. KIMES,<br>CDCR #V-80313,<br>　　　　　　　　　Plaintiff,<br>vs.<br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br>　　　　　　　　　Defendants. | Case No.: 21cv1873-BTM (BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS,**<br><br>**AND**<br><br>**(2) DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |

　　　　Plaintiff Kenneth K. Kimes, a state prisoner housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff claims that RJD staff took his personal property in retaliation for filing an inmate grievance and that their actions caused him to have a heart attack. (*Id.* at 3-5.) Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a separately filed copy of his inmate trust account statement. (ECF Nos. 2-3.)

## I. Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to prepay the entire fee only if leave to proceed in forma pauperis ("IFP") is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) &(4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2).

Plaintiff's prison certificate shows he had an average monthly balance of $0.07 and average monthly deposits of $0.00 for the 6-months preceding the filing of this action, and an available balance of $0.00. (ECF No. 3 at 1.)

The Court **GRANTS** Plaintiff's Motion to Proceed IFP and declines to impose an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

indicates he may have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.") Instead, the Court directs the Secretary of the California Department of Corrections and Rehailtation ("CDCR"), or her designee, to collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.     Screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.     Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule

12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Plaintiff's Allegations

Plaintiff's first cause of action claims a due process violation under the Fourteenth Amendment. (ECF No. 1 at 3.) He alleges that:

> Staff provided relief for radio lost and other personal property. Let me purchase new replacement. Then 3 month[s] later staff retaliated and took my property once more. As a result the property I purchased was taken from me and I was not allowed to send it home because it was too long after purchase. I was not permitted to get refund (see exhibits).

(*Id.*)

There are no exhibits attached to the Complaint, but Plaintiff has separately filed 147 pages of exhibits. (ECF No. 4.) They consist of his own declaration stating that a

"Sony CD Boombox" which he purchased with authorization on November 8, 2018, was confiscated and returned to its sender on March 13, 2019, although he believes it was stolen by RJD staff, detailing the steps he took to challenge its loss though the inmate grievance procedures, and explaining that he needed it "for therapy and relaxation" after he was admitted to the hospital on March 24, 2019 as a result of "a great deal of stress and mental exertion while attempting to resolve this issue." (*Id*. at 1-10.)  The other exhibits consist of documents detailing the acquisition, confiscation and disposition of that item, including copies of Plaintiff's inmate grievances (*id*. at 22-141), and a declaration from an RJD inmate indicating he recalls seeing a "Sony Boombox" confiscated from Plaintiff in the RJD "R&R Department . . . being used by the R.J.D. Staff." (*Id*. at 143.)

Plaintiff's second cause of action claims violations of the First, Eighth and Fourteenth Amendments for "free speech retaliation." (ECF No. 1 at 4.)  He alleges: "Because I filed appeal regarding lost property and won a TLR, staff entered my cell and stole my personal property to get revenge for filing an appeal over lost property this staff was responsible for (see exhibit)." (*Id*.)

Plaintiff's third and final cause of action alleges a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. (*Id*. at 5.)  He alleges: "As a result of the action by staff over prolonged period cause me to have a heart attack and other injuries (see exhibits)." (*Id*.)

Plaintiff names the CDCR and "Does 1-10" as Defendants in the caption of the Complaint, and in the body of the Complaint names individual Defendants RJD Warden M. Pollard, RJD Litigation Coordinator Garcia, and RJD Sergeants Diaz, L. Rodriguez, Ruttedge and K. Cowart. (*Id*. at 1-2.)  Other than alleging the individual Defendants acted under color of state law, there are no factual allegations specific to any Defendant. (*Id*.) Plaintiff seeks an "injunction to prevent retaliation" and monetary damages. (*Id*. at 7.)

**C.    Analysis**

Plaintiff's first cause of action alleges a violation of due process for the loss of his personal property. (ECF No. 1 at 3.)  Prisoners have a protected interest in their personal

property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, due process is not violated by a random, unauthorized deprivation of property if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Ninth Circuit has held that California's tort claim process provides an adequate post-deprivation remedy for property taken without due process. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam), citing Cal. Gov't Code §§ 810-895. Plaintiff has not stated a due process claim based on Defendants' purportedly unauthorized deprivation of his personal property since he has an adequate post-deprivation remedy for his losses. *Hudson*, 468 U.S. at 533; *Barnett*, 31 F.3d at 816-17.

Accordingly, the Court dismisses Plaintiff's property loss claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

Plaintiff's first and second causes of action allege his property was taken in retaliation for having filed and been granted relief on inmate grievances regarding the loss of his property. (ECF No. 1 at 3-4.) He alleges that three months after an inmate appeal was granted which allowed him to purchase a replacement radio for one lost during a transfer between prisons, "staff retaliated and took my property once more." (*Id*. at 3.) He alleges "staff entered my cell and stole my personal property to get revenge for filing an appeal of lost property this staff was responsible for." (*Id*. at 4.) Plaintiff does not identify any individual Defendant as having participated in the alleged deprivation, nor does he allege who among any of the individually named Defendants constitute the "staff" involved.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*,

255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.")

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114. Thus, with respect to the allegations Plaintiff was retaliated against for filing and winning an inmate grievance, he has identified a protected activity. However, Plaintiff must also allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Id.* The Complaint merely sets forth conclusory allegations that RJD "staff" acted with a retaliatory motive when they took his radio, which is insufficient to state a retaliation claim. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity). Although Plaintiff alleges the staff's actions were taken three months after he was allowed to purchase replacement property after winning his inmate appeal, and although the timing of a defendant's actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference of retaliatory intent. *Id*. If Plaintiff wishes to pursue a retaliation claim he must allege *facts* which support a plausible inference one or more Defendants took his property in retaliation for his protected activity. In other words, he should indicate why he believes his property was taken in retaliation for pursuing his inmate grievances.

Even if Plaintiff can cure that pleading defect, there are no factual allegations with respect to any individual Defendant within the Complaint. Rather, one or more of the named Defendants appear to be collectively referred to as "staff." A defendant is liable under § 1983 when he or she personally participates in the constitutional deprivation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are no factual allegations in the Complaint regarding which Defendant or Defendants Plaintiff contends is or are responsible for the

alleged constitutional violation. To the extent Plaintiff contends that Warden Pollard or any other named Defendant is liable as a supervisor of the other Defendants, supervisory officials may only be held liable under § 1983 if Plaintiff alleges their "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018). If Plaintiff wishes to pursue a retaliation claim he must identify which Defendant or Defendants were involved in the alleged retaliatory conduct. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976).

Accordingly, the Court dismisses Plaintiff's retaliation claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

Plaintiff's final cause of action alleges he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 1 at 5.) This claim is based on the allegation that: "As a result of the actions by staff over prolonged period cause me to have a heart attack and other injuries (see exhibits)." (*Id*.) Liberally construing the Complaint as alleging the "actions by staff" as the retaliatory confiscation of his radio, and that the stress of dealing with the inmate grievance process in that regard resulted in his hospitalization, after which he was not able to have the radio to use "for therapy and relaxation" (ECF No. 4 at 6), which then led to his heart attack and "other injuries," the Complaint does not identify which of the named Defendants constitute the "staff" he seeks to hold liable, and does not identify the nature of the "other injuries" he allegedly suffered.

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently

culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.*, quoting *Wilson*, 501 U.S. at 302-03.  A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

There are no factual allegations in the Complaint from which a plausible inference can be drawn that any Defendant acted in knowing disregard to an excessive risk to Plaintiff's health or safety which caused Plaintiff to have a heart attack or suffer "other injuries." *See id.* (holding that a prison official can be held liable only if he or she is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference."); *Iqbal*, 556 U.S. at 678 (the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of stating a § 1983 claim).  While the court has an "obligation . . . where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc), it may not, in so doing, "supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

The Complaint as currently drafted fails to state an Eighth Amendment claim because Plaintiff has not identified the "actions by staff" which he alleges caused him "to have a heart attack and other injuries."  Even assuming those actions consist of the retaliatory confiscation of the radio he needs for therapy and relaxation, Plaintiff has failed to plausibly allege that one or more named Defendants were aware he faced a substantial risk of serious harm when they took the actions he contends resulted in his injuries, and were aware that taking those actions subjected him to a substantial risk of serious harm. *See Toguchi v. Chung*, 391 F.3d 1051, 1056 (9th Cir. 2004) (holding that a prison official acts with deliberate indifference where they know of and deliberately disregard a risk to the prisoner's health).  If Plaintiff wishes to proceed with this claim, he must identify which

Defendant or Defendants he seeks to hold liable and set forth facts which plausibly allege they were aware that he faced a substantial risk of serious harm to his health by depriving him of his radio.  In other words, Plaintiff should allege facts demonstrating Defendants were aware of facts from which an inference could be drawn that depriving him of his radio subjected him to such a risk and that they actually drew that inference when they took and kept his radio.  *Farmer*, 511 U.S. at 837 (a prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

### D. Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can and if he wishes to attempt to do so.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### III.   Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2).  All payments should be clearly identified by the name and number assigned to this action.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4.     **DISMISSES** all claims against all Defendants in the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

5.     **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants.  Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint.  Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")  If Plaintiff fails to amend, the Court will dismiss this action for failure to state a claim and failure to prosecute. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

6.     **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for use in amending.

**IT IS SO ORDERED.**

Dated: December 13, 2021

_____
Hon. Barry Ted Moskowitz
United States District Court